## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT P. HURLEY,                                    Case No. 1:13-cv-913
    Plaintiff,                                   Litkovitz, M.J.

    vs.

COMMISSIONER OF                                      **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 11), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply

(Doc. 22).

## I. Procedural Background

Plaintiff filed an application for DIB in January 2011, alleging disability since June 19,

2009, due to backache, degenerative disc disease, high blood pressure, coronary artery disease,

angina and chronic pain. Plaintiff's application for DIB was denied initially and upon

reconsideration. Plaintiff, through a non-attorney representative, requested and was granted a *de*

*novo* hearing before administrative law judge (ALJ) Ena Weathers. Plaintiff and a vocational

expert (VE) appeared and testified at the ALJ hearing. On November 27, 2012, the ALJ issued a

decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements for disability insurance benefits on his alleged onset date of June 19, 2009, and continues to meet them through December 31, 2013.
>
> 2. There is no evidence that the [plaintiff] has engaged in any substantial gainful activity since his alleged onset date (20 CFR 404.1571-1576).
>
> 3. The [plaintiff] has the following severe impairments: degenerative joint disease of the lumbar spine, coronary artery disease with angina and residuals of stent placement, degenerative joint disease of the right knee, peripheral vascular disease, and tobacco abuse (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. Careful consideration of the entire record shows that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He can stand and/or walk up to 6 hours of an eight hours workday, and sit up to 6 hours a workday; the [plaintiff] is able to occasionally push and pull with the lower extremity; he is unable to climb ladders, ropes, or scaffolds; the [plaintiff] is able to occasionally stoop, crouch, and climb ramps and stairs; he cannot bend or kneel; and, the [plaintiff] should avoid concentrated (more than occasional) exposure to extreme cold, extreme heat, wetness, or work around hazards including at unprotected heights and machinery.
>
> 6. The [plaintiff] is capable of performing past relevant work as a purchasing agent and sourcing agent. This work does not require the performance of work-

3

related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 19, 2009, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 6-11).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

4

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that the ALJ erred by: (1) failing to properly consider the opinions of his treating physicians, Dr. Theresa Aurand, M.D., and Dr. Set Shahbabian, M.D.; (2) failing to give proper consideration to the opinion of his physical therapist, Jacqueline Kersting; (3) failing to give proper weight to the opinions of the state agency consultants, Dr. Elizabeth Das, M.D., and Dr. Leigh Thomas, M.D., in accordance with Social Security Ruling 96-6p; (4) finding plaintiff was not disabled at Step Four of the sequential evaluation process despite evidence that plaintiff's past job was a "composite job" on which a Step Four non-disability determination cannot be based; and (5) failing to consider the limitations caused by plaintiff's peripheral vascular disease.[1] (Docs. 11, 22).

### 1. The ALJ erred in weighing the treating physicians' opinions.

Plaintiff contends that the ALJ failed to comply with the "treating physician rule." (Doc. 11 at 8-11; Doc. 22 at 2-7). Plaintiff alleges that the ALJ improperly discounted the opinions of his treating physicians and failed to provide specific reasons as to why the treating physicians' opinions should not be afforded controlling weight. The Commissioner argues that the ALJ gave valid reasons for discounting the treating physicians' opinions, which were not consistent with each other and with the opinions of the other physicians of record. (Doc. 17 at 6-8).

It is well-established that the findings and opinions of treating physicians are entitled to

---

[1] The Court has reordered the assignments of error and considered them in a different order than presented by plaintiff.

5

substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the length, nature and extent of the treatment relationship and the frequency of examination.  20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the

opinion is with the record as a whole, and other factors which tend to support or contradict the

opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also* 20 C.F.R. §

404.1527(c)(2); *Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight

afforded the treating physician opinion). Those reasons must be "supported by the evidence in

the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p). This procedural requirement "ensures that

the ALJ applies the treating physician rule and permits meaningful review of the ALJ's

application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

*i. Treating physician Dr. Aurand*

The ALJ failed to comply with the "treating physician rule" when evaluating the opinions

of plaintiff's treating internist, Dr. Aurand. The ALJ considered three assessments of plaintiff's

functional capacity prepared by Dr. Aurand. (Tr. 10, citing Tr. 279, 283-84, 293-94). Dr.

Aurand completed the first assessment on July 18, 2009. (Tr. 293-94). Dr. Aurand diagnosed

plaintiff with back pain with radicular symptoms. (Tr. 293). She reported that x-rays showed

degenerative changes and an MRI was pending. Dr. Aurand reported that plaintiff was seeing a

specialist in connection with the MRI. (Tr. 294). She assessed the following functional

limitations: plaintiff could sit, stand, and walk a total of two hours each in a workday; he could

7

never climb, twist/bend/stoop, or operate heavy machinery; he could occasionally reach above shoulder level; and he could frequently lift 11 to 20 pounds. (Tr. 293-94).

Two weeks later, on July 31, 2009, Dr. Aurand reported that plaintiff had undergone an MRI and x-rays and had been diagnosed with multi-level, broad disc disease, which was most significant at L4-L5. (Tr. 283-85). She reported plaintiff had undergone the first in a series of three scheduled epidural injections. (Tr. 283-84). She assessed plaintiff as unable to perform any lifting over 10 pounds, bending, or twisting at least through August of 2009. (Tr. 283).

On August 3, 2009, Dr. Aurand completed a disability insurance form listing plaintiff's current diagnoses as back pain at L4-L5 and diffuse broad disc bulging in the lower spine. (Tr. 279). She restricted plaintiff to no lifting over 10 pounds, no lifting 10 pounds on a repetitive basis, and no repetitive twisting or bending. Dr. Aurand reported that the current course of treatment consisted of a series of epidural injections, visits to back specialists, oral muscle relaxers, prednisone, and pain medications. She also reported that plaintiff had undergone an MRI and x-rays of the spine. Dr. Aurand reported that plaintiff's prognosis for return to work on a part-time or full-time basis was uncertain and would depend on his response to epidurals. She reported that if his pain persisted, he would be referred for a neurosurgery consult and evaluation.

The ALJ found that Dr. Aurand's assessments were entitled to "some weight." (Tr. 10). The ALJ stated:

> These assessments deserve some weight, but they are from different time periods, reflecting periodic changes in his functioning. However, the assessments are, overall, not inconsistent with an ability to perform a range of light work.

(*Id.*).

8

The ALJ's evaluation of Dr. Aurand's opinion does not comply with the treating physician rule. The reasons the ALJ gave for affording only "some weight" to Dr. Aurand's assessments of plaintiff's functional limitations do not find substantial support in the record. Contrary to the ALJ's statement that Dr. Aurand's assessments were "not inconsistent" with an ability to perform light work (Tr. 10), the limitations imposed by Dr. Aurand would not permit the performance of light work, which the regulations define as work involving:

> lifting no more than 20 pounds at a time with *frequent lifting or carrying of objects weighing up to 10 pounds*. Even though the weight lifted may be very little, a job is in this category when it requires *a good deal of walking or standing, or when it involves sitting most of the time* with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 404.1567(b) (emphasis added). *See also* SSR 83-10, 1983 WL 31251, at *6 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). Dr. Aurand limited plaintiff to two-hours of standing, walking and sitting in an eight-hour workday and to no lifting of ten pounds on a repetitive basis, all of which are inconsistent with an ability to perform light work.

Further, although the ALJ discounted Dr. Aurand's assessments because she found they reflect variations in plaintiff's functioning (Tr. 10), the ALJ did not explain why Dr. Aurand's opinions were entitled to less than controlling weight for that reason. Although it is not entirely clear from her decision, it appears the ALJ may have discounted Dr. Aurand's decision because she reported on November 2, 2009, that plaintiff had no back pain, his physical examination was normal, and he was released from her care for back pain. (Tr. 10, citing Tr. 276). However, the ALJ failed to note when evaluating Dr. Aurand's opinion that she had referred plaintiff to a neurosurgeon, Dr. Shahbabian, on September 21, 2009, after plaintiff failed to obtain relief from

epidural injections, and that plaintiff was under Dr. Shahbabian's care beginning October 2009. (*See* Tr. 278). The ALJ did not consider whether Dr. Shahbabian's reports showed continuing back symptoms which supported the functional limitations assessed by Dr. Aurand. *See* 20 C.F.R. 404.1527(c).

In addition, the ALJ decided to give Dr. Aurand's assessments only "some weight" without considering whether her opinion was (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole*, 661 F.3d at 937. The ALJ did not discuss the MRI and x-ray findings referenced in Dr. Aurand's reports and whether those findings supported the functional limitations she imposed. Nor did the ALJ discuss whether Dr. Aurand's opinion was consistent with the findings and assessments of the other physicians of record. In fact, Dr. Aurand's opinion appears to be consistent with the assessments of the non-examining state agency physicians, Drs. Das and Thomas. These physicians likewise limited plaintiff to walking two hours in an eight-hour workday. (Tr. 81, 95). Although the ALJ gave this portion of the non-examining physicians' opinion only "some weight" because she found it was "not supported by the medical evidence of record," the ALJ failed to discuss any evidence that purportedly supported her finding. (Tr. 10). The ALJ also failed to discuss whether Dr. Aurand's opinion was consistent with Dr. Shahbabian's reports that plaintiff could not "sit or stand for any length of time"; he could not "stand or sit longer than 10-15 minutes"; and he was restricted from performing "heavy" work or "any type of labor." (Tr. 460, 463, 477, 479). In light of the seemingly consistent opinions of the physicians of record, and absent any consideration by the ALJ as to whether Dr. Aurand's

opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," the ALJ's decision to give Dr. Aurand's opinion less than controlling weight is not substantially supported. *See Blakley*, 581 F.3d at 407.

In addition, the ALJ failed to analyze the factors that must be considered in determining the weight to afford a treating physician's opinion that is not entitled to controlling weight. The ALJ did not consider the length and nature of the treating relationship; how well-supported by the evidence Dr. Aurand's opinions were; and how consistent her opinions were with the record as a whole. As explained above, the ALJ did not consider whether Dr. Aurand's opinions were consistent with the opinions rendered by the state agency reviewing physicians, who likewise limited plaintiff to standing/walking only two hours in a workday (Tr. 81-83, 94-96) and by treating neurosurgeon Dr. Shahbabian, who reported that plaintiff had significant sitting and standing restrictions and assessed plaintiff as unable to perform "heavy" or "labor" type work. (Tr. 460, 463, 477, 479).

Thus, the ALJ did not comply with the treating physician rule by giving "good reasons" for giving less than controlling weight to Dr. Aurand's opinions. The ALJ's failure to comply with the treating physician rule in evaluating Dr. Aurand's opinions precludes meaningful review of the ALJ's decision. *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544). The ALJ's rejection of Dr. Aurand's functional assessments is not supported by substantial evidence.

ii. *Treating physician Dr. Shahbabian*

The ALJ also failed to comply with the treating physician rule by neglecting to assign weight to the treating neurosurgeon's opinions. (Tr. 10). The ALJ acknowledged that Dr. Shahbabian had issued assessments on multiple dates opining that plaintiff "should not perform

11

any heavy work." (*Id.*). The ALJ noted that first, Dr. Shahbabian had reported after surgery in May 2010 that plaintiff "could not sit or stand for any length of time, making heavy work impossible [Tr. 463]." (Tr. 10). The ALJ stated that second, Dr. Shahbabian noted in October 2010 that plaintiff "complained of an inability to stand or sit more than 10 to 15 minutes, or do any heavy lifting, bending, stooping, and the like" and that Dr. Shahbabian "added he could understand why the claimant cannot do these things [Tr. 460]." (*Id.*). The ALJ then concluded that:

> Dr. Shahbabian's assessments that the claimant should not perform any heavy work are not inconsistent with a residual functional capacity for light work. However, his comments also show that he is sympathetic to the claimant and his pursuit of obtaining disability [Tr. 460].

(Tr. 10).

In reaching this conclusion, the ALJ did not evaluate whether Dr. Shahbabian's opinions were entitled to controlling weight. In fact, the ALJ did not decide whether Dr. Shahbabian's assessments were entitled to any weight, and it is impossible to discern from the ALJ's decision whether the ALJ credited Dr. Shahbabian's opinions to any extent. The ALJ appears to have adopted Dr. Shahabian's opinion that plaintiff was not capable of performing "heavy work" by finding this assessment was "not inconsistent" with an RFC for light work. (*Id.*). On the other hand, the ALJ appears to have discounted Dr. Shahbabian's opinions by attributing to the doctor an improper bias in favor of plaintiff. (*Id.*). Because the ALJ did not explain her seemingly

12

inconsistent findings, it is impossible to reconcile them.[2]

Even considered independently, the ALJ's findings are not substantially supported by the record. The ALJ found that Dr. Shahbabian's assessments that plaintiff should not perform any "heavy work" were not inconsistent with an RFC for light work. (Tr. 10). However, Dr. Shahbabian did not clarify what he meant by "heavy" work. Read as a whole, Dr. Shahbabian's reports do not demonstrate that it was his medical opinion that plaintiff was capable of performing the functional requirements of "light work" as defined under the Social Security regulations. After initially reporting in October 2009 that plaintiff was "not able to do any heavy work" (Tr. 479), Dr. Shahbabian subsequently reported in June 2010 that plaintiff could not "sit or stand for any length of time" and could not "return to any type of labor work[.]" (Tr. 463). Dr. Shahbabian further indicated in his October 2010 report that "the amount of degeneration" disclosed by the MRI was an objective basis for plaintiff's subjective complaints, including an inability to stand or sit more than 10 to 15 minutes. (Tr. 460). Given these findings indicating limitations on plaintiff's ability to sit and stand for extended time periods, and absent a functional assessment by Dr. Shahbabian, the ALJ's finding that Dr. Shahbabian's assessments were not inconsistent with an RFC for light work is not substantially supported by the evidence.

Further, the ALJ suggested that she was discounting Dr. Shahbabian's opinions because comments in his written report showed an improper "sympathy" toward plaintiff and his request for disability benefits. (Tr. 10). The record shows that this was not an appropriate consideration.

---

[2] The Commissioner alleges that the ALJ "declined to adopt the portion of Dr. Shahbabian [sic] opinion that concerned Plaintiff's ability to sit or walk." (Doc. 17 at 6). This is an unwarranted assumption on the Commissioner's part as the ALJ did not discuss which aspects of Dr. Shahbabian's report, if any, she rejected and which portions she adopted. (Tr. 10). The Court cannot accept the Commissioner's post-hoc rationalization in support of the ALJ's decision. *See Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion. . . .") (internal citations omitted).

Dr. Shahbabian stated that plaintiff was applying for disability, which was "fine," and that he would support plaintiff by supplying any requested information. (Tr. 460). These statements do not demonstrate any type of improper "sympathy" or bias on the part of the treating physician. (Tr. 10).

Thus, the ALJ erred by failing to evaluate Dr. Shahbabian's assessments in accordance with the treating physician rule. The ALJ did not consider whether Dr. Shahbabian's assessments were entitled to controlling weight. *See Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole*, 661 F.3d at 937. The ALJ did not discuss whether the medical findings supported Dr. Shahbabian's findings, including September 2009 MRI findings which disclosed a "significant annular tear in the left L2-L3" and "extrusion of the disc material in the left, far lateral L2-L3, a fairly large disc herniation" (Tr. 478); myelographic images which Dr. Shahbabian opined "clearly demonstrate that the exiting L2 root is compromised," which "could produce excruciating pain due to paraspinalous spasm and at times . . . bilateral discomfort" (Tr. 479); and decreased epidermal lipomatosis with a "little more degenerated" disc bulge at L2-L3 (Tr. 463). Nor did the ALJ discuss whether Dr. Shahbabian's opinions were consistent with those of the other physicians of record. In addition, the ALJ failed to analyze the regulatory factors that must be considered in determining the weight to afford a treating physician's opinion that is not entitled to controlling weight. The ALJ did not consider the length and nature of the treating relationship; Dr. Shahbabian's specialty as a neurosurgeon; how well-supported by the evidence Dr. Shahbabian's opinion was; and how consistent the opinion was with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6). For these reasons, the ALJ's evaluation of Dr. Shahbabian's assessments is not supported by substantial evidence.

14

*iii. Conclusion*

The ALJ did not comply with the treating physician rule by giving "good reasons" for giving less than controlling weight to the treating physicians' opinions. The ALJ also made seemingly contradictory findings which are impossible to reconcile. The ALJ's failure to comply with the treating physician rule in this case and to properly evaluate the assessments of Drs. Aurand and Shahbabian precludes meaningful review of the ALJ's decision and "denotes a lack of substantial evidence." *Gayheart*, 710 F.3d at 376 (citations omitted). The Commissioner has proffered reasons to support the ALJ's determination, but the Court cannot excuse the ALJ's failure to weigh a treating physician's opinion in accordance with the Social Security procedural regulations, even though there may be sufficient evidence in the record that supports the ALJ's decision. *See Wilson*, 378 F.3d at 546. The ALJ's legal error warrants a reversal and remand of this case for re-weighing of the treating physicians' opinions consistent with the treating source regulation and Sixth Circuit law and for reconsideration of plaintiff's residual functional capacity. 20 C.F.R. § 404.1527(c); *Wilson*, 378 F.3d at 546.

Plaintiff's first assignment of error is sustained.

**2. The ALJ erred by failing to properly weigh the opinions of the non-examining state agency physicians.**

Plaintiff alleges as his third assignment of error that the ALJ erred by failing to adopt the standing and walking limitations imposed by the non-examining state agency physicians, Drs. Das and Thomas, who opined that plaintiff could lift, carry, and push/pull up to 20 pounds occasionally and 10 pounds frequently; sit about six hours in an eight-hour work day; stand/walk about two hours in an eight-hour work day; occasionally climb ramps/stairs, stoop, kneel, crawl and crouch; never climb ladders/rope/scaffolds; frequently balance; and he must avoid

15

concentrated exposure to extreme cold and heat, wetness, and hazards such as machinery and heights. (Tr. 81-82, 94-96). Plaintiff alleges that because the ALJ found the opinions were generally credible, it was error for the ALJ to give no weight to certain portions of the opinions. (Doc. 11 at 13). Plaintiff further alleges that these opinions were consistent with the other medical evidence and opinions of record. (*Id*. at 13-14).

The Commissioner argues that the ALJ followed the correct legal standard by considering the non-examining physicians' opinions and explaining "why some portions were entitled to more weight than others[.]" (Doc. 17 at 12, citing SSR 96-6p) ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

The ALJ is required to evaluate the opinions of nonexamining state agency medical sources in accordance with the regulatory factors. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). "[T]he opinions of State agency medical . . . and other program physicians . . . can be given weight only insofar as they are supported by evidence in the case record[.]" *Smith v. Colvin*, No. 2:13-cv-582, 2014 WL 2197940, at *5 (S.D. Ohio May 27, 2014) (citing SSR 96-6p, 1996 WL 374180, at *2).

Here, the ALJ noted the functional limitations assessed by Drs. Das and Thomas and concluded:

> This assessment deserves some weight, but Drs. Thomas and Das are nonexamining sources. The [ALJ] finds that the portion of the assessment that limits the claimant to standing and/or walking only 2 hours a workday is not supported by the medical evidence of record, summarized above.

(Tr. 9-10).

16

While the ALJ was not bound to adopt the nonexamining state agency physicians' RFC assessment in its entirety, the ALJ's conclusory statement is insufficient to permit meaningful review of her evaluation of the assessment. The ALJ did not discuss those medical findings that supported the reviewing physicians' RFC assessment and those medical findings which were inconsistent with the assessment. As explained in connection with plaintiff's first assignment of error, the standing and walking limitations imposed by Drs. Das and Thomas appear to be consistent with those assessed by plaintiff's treating physician, Dr. Aurand, and are not necessarily inconsistent with the limitations assessed by plaintiff's treating neurosurgeon, Dr. Shahbabian. Thus, absent any consideration by the ALJ as to whether these assessments were consistent with each other and with the medical findings of record, the Court cannot determine whether the ALJ's decision to afford "some weight" to the nonexamining physicians' opinions is supported by substantial evidence. The ALJ should re-weigh these opinions on remand. Plaintiff's third assignment of error is sustained.

**3. The ALJ did not err by failing to properly consider the physical therapist's opinion.**

Plaintiff alleges as his second assignment of error that the ALJ erred by failing to give proper consideration to the opinion of his physical therapist, Jacqueline Kersting. (Doc. 11 at 11-12). Ms. Kersting prepared a report dated February 23, 2011. (Tr. 425). She reported that plaintiff had attended ten physical therapy sessions between November 2, 2009 and January 15, 2010. She reported that plaintiff experienced a number of symptoms, including constant pain that increased with activity, positive straight leg raising, tight hamstrings, numbness across the lower back and into the back of the legs, a guarded gait, and an inability to walk more than ten minutes without an increase in his symptoms.

17

The ALJ acknowledged that the record included assessments by Ms. Kersting. (Tr. 10).

However, the ALJ found that the assessments were entitled to "little weight" because a physical

therapist is not an "acceptable treating source" and the record did not include a formal functional

capacity assessment prepared by the physical therapist. (*Id.*).

The ALJ did not err in this regard. As a physical therapist, Ms. Kersting is not an

"acceptable medical source" under the Social Security regulations who is qualified to assess the

severity of plaintiff's impairments and functioning. *Compare* 20 C.F.R. § 404.1513(a)

(acceptable medical sources include licensed physicians, licensed or certified psychologists,

licensed optometrists, licensed podiatrists and qualified speech-language pathologists), with 20

C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as nurse practitioners,

physicians' assistants, naturopaths, chiropractors, audiologists and therapists, are considered to

be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of

Soc. Sec.,* 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not entitled to

significant weight because therapist not recognized as an acceptable medical source); *Jamison v.

Comm'r,* No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (Dlott, J.)

(same). Because physical therapists are not considered acceptable medical sources under the

regulations, the ALJ was not required to give any special deference to Ms. Kersting's findings

and report. Thus, it was not error for the ALJ to give "little weight" to Ms. Kersting's report.

Plaintiff's second assignment of error is overruled.

### 4. The ALJ did not violate SSR 82-61.

Plaintiff alleges as his fourth assignment of error that the ALJ erred at Step Four of the

sequential evaluation process by failing to recognize that his past relevant work as a

purchasing/sourcing agent was a "composite" job which he lacks the functional capacity to perform. (Doc. 11 at 14-15; Doc. 22 at 9-10). *See* SSR 82-61 ("composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT [Dictionary of Occupational Titles."). Plaintiff alleges that according to the VE's testimony, there is no code in the DOT for the purchasing/sourcing agent job as plaintiff actually performed it. (Doc. 11 at 15). Plaintiff asserts that absent a corresponding DOT code, the ALJ could not deny disability benefits at Step Four based on a finding that plaintiff was able to perform his past work. In support of his argument, plaintiff relies on the POMS, § DI 25005.020.[3]

The Commissioner argues that the ALJ's Step Four finding should be affirmed because the ALJ accounted for all of plaintiff's medically supported functional limitations when questioning the VE. (Doc. 17 at 13-14). The Commissioner asserts that contrary to plaintiff's argument, the ALJ was not required to exclude past relevant work from consideration at Step Four of the sequential analysis simply because plaintiff's prior job did not correspond precisely with a job listed in the DOT. (Doc. 17 at 13-14, citing SSR 82-61). The Commissioner further alleges that even assuming the VE did not account for all of the duties of the purchasing and sourcing agent job, the ALJ's ultimate decision is nonetheless supported by substantial evidence because the VE identified 493,000 light jobs plaintiff could perform if he were limited to a range of light work. (*Id.*).

---

[3] *See* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020. The POMS is the *Program Operations Manual System*. It is used internally by employees of the SSA in evaluating Social Security claims and does not have the force and effect of law. *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). The POMS explains the meaning of SSA terms as well as the meaning intended by terms appearing within the regulations. *Id.* (citing *Powderly v. Schweiker*, 704 F.2d 1092 (9th Cir. 1983)). *See also Harper-Lee v. Astrue*, No. 2:11-cv-571, 2012 WL 4483007, at *5 (S.D. Ohio Sept. 27, 2012) (the POMS provides "only internal SSA guidance" and is not intended to and does not create rights enforceable by law).

Social Security Ruling 82-61 identifies three possible tests for determining whether a claimant retains the capacity to perform his past relevant work. These include: (1) whether the claimant "retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job"; (2) whether the claimant retains the capacity to perform the particular functional demands and job duties of his past job as he actually performed it; and (3) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *1-2. Under the second test, the claimant should be found to be "not disabled" if the evidence shows that he retains the RFC to perform the functional demands and job duties of a past relevant job as he actually performed it. *Id*. Under the third test, the DOT can be used to define the job as it is usually performed in the national economy, although "[i]t is understood that some individual jobs may require somewhat more or less exertion than the DOT description." *Id*., at *3. The Ruling clarifies:

> A former job performed [] by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

*Id*.

The POMS § DI 25005.020 is consistent with SSR 82-61 and instructs ALJs as follows:

> Composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT.
>
> If you can accurately describe the main duties of PRW [past relevant work] only by considering multiple DOT occupations, the claimant may have performed a composite job.

20

If you determine that PRW was a composite job, you must explain why.

When comparing the claimant's RFC to a composite job as it was performed, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.

A composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work "as generally performed in the national economy."

POMS § DI 25005.020.

At the ALJ hearing, the VE testified that plaintiff's past work as a purchasing and sourcing agent was properly classified as DOT #249.367-066, sedentary, but that plaintiff actually performed the job at the "light" level. (Tr. 59-60). When questioned further on the nature of plaintiff's past relevant work, the VE did not agree that the purchasing/sourcing agent job was a "composite job." Instead, the VE testified that the job fit under "purchasing" because it involved the "ability to know what to purchase." (Tr. 65). The VE accounted for the additional lifting and carrying plaintiff described as part of his job duties by characterizing plaintiff's prior purchasing/sourcing agent job as "light." (Tr. 64-65). Because the VE provided no indication that plaintiff's past relevant work as a purchasing/sourcing agent was a "composite job," the ALJ was free to consider whether plaintiff had the RFC to perform the purchasing job as generally performed in the national economy. *See* SSR 82-61. Further, even assuming the purchasing/sourcing agent job is appropriately characterized as a "composite job," the ALJ could properly compare plaintiff's RFC to the purchasing/sourcing agent job as plaintiff actually performed the job and determine whether plaintiff was capable of performing all components of the job. *See* POMS § DI 25005.020. The ALJ in fact compared plaintiff's RFC with the physical and mental demands of the purchasing agent/sourcing agent job and found that plaintiff could

21

perform the job as he actually performed it.  (Tr. 11).  The ALJ's analysis did not violate either

SSR 82-61 or the POMS.  Plaintiff's fourth assignment of error is overruled.[4]

### 5.  The ALJ did not err by failing to find plaintiff's impairments meet or equal the Listings.

Plaintiff alleges that the ALJ erred by failing to find that his coronary artery disease with

angina and residuals of stent placement, combined with his severe back impairment, were of

sufficient severity to meet or equal the criteria of an impairment in the Listings, 20 C.F.R. Pt.

404, Subpt. P, App'x 1.  (Doc. 11 at 15-16).  The Commissioner argues that plaintiff has waived

this argument by failing to identify the Listing at issue and to develop this argument.  (Doc. 17 at

4-5).  The Commissioner further contends that the ALJ properly analyzed plaintiff's impairments

under several Listings and explained why plaintiff's impairments did not meet or medically equal

any relevant Listing.  (*Id*. at 5-6).

Here, the ALJ considered several Listings but determined that plaintiff does not have "an

impairment or combination of impairments that meets or medically equals one of the listed

impairments[.]"  (Tr. 8).  Plaintiff has not identified a specific Listing that the ALJ failed to

consider.  Further, insofar as plaintiff alleges that the ALJ failed to consider his impairments in

combination, his argument is not well-taken.  "An ALJ's individual discussion of multiple

impairments does not imply that [s]he failed to consider the effect of the impairments in

combination, where the ALJ specifically refers to a 'combination of impairments' in finding that

---

[4] Insofar as plaintiff alleges that the ALJ erred by relying on vocational testimony that was not supported by substantial evidence because it failed to accurately portray plaintiff's physical impairments, it is not necessary to address this allegation in connection with this appeal.  Because the ALJ's RFC finding is not supported by substantial evidence, the ALJ could not rely on answers to hypothetical questions that restated her unsupported RFC finding.  *See White v. Commissioner of Social Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated RFC which did not accurately portray claimant's physical and mental impairments).

the plaintiff does not meet" a listed impairment. *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citation omitted). Plaintiff's fifth assignment of error is overruled.

**III. Conclusion**

This matter must be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Order. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, this matter must be reversed and remanded to the Commissioner to reweigh the opinions of plaintiff's treating physicians and the other medical providers of record in accordance with the standards set forth herein, and to obtain additional medical testimony and vocational evidence as warranted.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 3/3/15

Karen L. Litkovitz
United States Magistrate Judge